The next case for argument this morning is Gibson v. Chubb National Insurance Company, case number 25-1121. Good morning, Your Honor. Good morning, Counsel, Your Honors. David Goodman on behalf of Wesley In the ten years preceding the fire in October 2019, Mr. Gibson bought a policy of insurance from Chubb for his home, for his vacation home. Year after year, each year, the policy began with a summary of the policy with a description of what's covered, including the contents, with $3.5 million of coverage. The dwelling, $8.7 million of coverage. It identified the valuable articles coverage. It talked about the liability coverage. There was not a word within that at all to describe or discuss business, business property. It wasn't a surprise to Chubb when it was writing this policy that Mr. Gibson was using the house for both personal and business use. The underwriters who wrote the policy were aware of this. They noted that this is a client who has a location called Pine Manor. When it was originally presented to us, this is in 2017, it was for use with his clients. He has his own firm, Gibson Consulting, sold his first consulting firm back in 2001. They come up to the property and he has space for a lot of folks for retreats, etc. They wrote insurance policies, actually, not just for Pine Manor, but for I believe the other eight houses that were in the area and the environs. In this case, though, when the court looked at the contents claim, it made an error of law in its construction of the insurance policy. It failed to follow Illinois law relating to the construction of the policy. In particular, in its reading of the business property exclusion and its very, very broad reading of the exclusion, here the contents coverage defines the scope of coverage at issue. It's very clear as to what is covered. It's personal property that's owned or possessed by the insured or his family members. It focuses on ownership, not use. It goes further. It's literally anywhere in the world. It's not defined by where it's found. It's defined by ownership. But the business exclusion focuses on use. It's pretty plainly applicable here given the evidence of the use of this property as a luxury B&B. The business exclusion itself just says business property. It doesn't identify what business property is. It doesn't talk about use at all. It just says use to conduct your business. The business property exclusion doesn't actually say that. Well, that's how business property is defined. You're talking about the definition of business property in the extra coverage, not in the exclusion. But the exclusion says that coverage is excluded for any loss to business property. It says we do not cover any loss to business property other than it's provided under extra coverages. Right, and that loops in the broad definition of business property and then the $25,000 limitation on that exclusion. In other words, there's a restoration of coverage for business property but only to the extent of $25,000. So there's the exclusion itself and then there is something in addition. There's a grant of coverage. That's the extra coverage. And then there's the exclusion, which is a narrowing of the contents coverage. And so what does it mean? It doesn't identify the use. It doesn't limit the use. I mean, there is. You're correct. If I look at the definition of what constitutes business property under the extra coverage, it talks about business property you own or possess. What is business property? I mean, one of the questions I have is what is business property? And it identifies, it says business property means furniture, supplies, equipment, inventory, semicolon, books, records, semicolon, and electronic data processing property used to conduct your business. So does the use to conduct your business modify just the electronic data processing? I don't know. I mean, I'm not a grammarian, and honestly, this doesn't read really well. It certainly could have been written more cleanly and more clearly if what they were trying to do was call out, no matter how you use your property, if you use it at all, if you use it incidentally, if I were to pull out my cell phone on the bus and look at an email, that would be an occasional email from work. That would be an occasional use, even though I own my phone and I use it every single day. It would be if I used my, as I do actually, my dining room table at home when I work from home, when I look at night at briefs, when I write things at home, my dining room table has then been transformed into business property because that's where I conduct work each night. So is that what it means? Is that what an ordinary, reasonable person? Right, but this case doesn't involve those kinds of examples that are at the margins. This property is being used for most of the year for business purposes as a bed and breakfast and events and conference facility. The family only used it for 70 days a year for personal use. Well, the property itself, what is the property? He built this house, brought his personal property into this house. Well, that's how it started out, and perhaps when the policy was originally written, that's the information he provided to the insurer, and the insurer only discovered belatedly through an online search that this was actually being used as a B&B. It was actually never used as a B&B. Well, not being, I'm using that term colloquially. It's an events facility and conference facility. But they knew that. Chubb knew that from the beginning. The use that you're talking about, the substantial use of the house. But it's not Chubb's obligation to determine your coverage that you want. In fact, there's evidence that your client was advised through Chubb, through the agent, that this may not be the right property insurance for him. It's Chubb's obligation to be clear in defining what the exclusion applies to and what it doesn't. And here, where from the beginning of the time that Chubb sold him this policy, it understood how he was using this property. Are you arguing that business property under exclusions means something different than business property under extra coverage? I'm saying it's not clear. I'm saying that business property under the exclusions, if you look at the beginning of the policy where they describe how I'm supposed to understand the terms, business property is not capitalized. It's not called out. It's not defined. It's only defined under extra coverage. So why wouldn't the same definition apply? It's defined in the context of a grant of coverage, where the burden would be on Mr. Gibson to establish that the property, in fact, qualifies as business property. For purposes of claiming the $25,000 policy limits. That's right. The burden in terms of applying the exclusion isn't his. It's Chubb's. And it's Chubb's burden to be clear about what is business property for the purposes of the exclusion. And I'll tell you, if you look at how they describe and discuss other exclusions, for example, golf carts, they're exhausted. They're very, very clear. On this one, they're not. And so in a time, in a world in which people use property for mixed use all the time, how much use – I mean, you're correct, Judge Sykes. I mean, he did use the property for – I'm not disputing that he used – the record says he uses the property a lot for business. He also uses it a lot for personal, and it's his personal property. So at a minimum, the fact that it's in his house doesn't transform everything to business property. You'd have to look at and evaluate and understand how it was used. In this case, the court didn't do that. The court sort of weighed evidence and said, well, this is what I find. But it didn't actually – it was weighing evidence. There were disputes of fact. That's not what the court did. The court found that the facility was primarily used for business, and because of that, anything within it was business property. Yeah, but that isn't how the contents coverage is defined. It's not defined by where it's found. It's specifically not defined by where it's found. It's defined by ownership. And so the fact that it's in a facility that's used in this manner – in fact, to reach her conclusion, she had to add language. She had to say, I'm going to – we'll carve out the property that you keep under lock and key. That's, of course, nowhere in the policy as well. So to get to her conclusion, she couldn't use the policy as written. She had to read it a different way. She had to add language that wasn't found within the policy itself. Well, the policy as written cross-references the extra coverages provisions regarding business use and the definition of business property. It does – it doesn't talk about the definition, doesn't identify where to find it, but it does say extra coverages. It specifically says –  It says go there to find the definition – not the definitions of these terms, but it incorporates through that cross-reference the language of the extra coverages provision. And even there, does it mean – does it actually mean that it – how much – if you use it at all, does it make any sort of qualitative delineation? Well, we don't have a margins case here, so the dispute about whether it says whether you use it at all or incidentally doesn't really matter here. Which piece of property are we talking about? That's the other piece. When the court looked at this, she said, because everything's in this house and this house is used a lot, predominantly, she even said, well, I think it's dubious because of how it's taxed. I mean, again, I think that that's a case where the court is going and doing what it's not supposed to be doing on a summary judgment. That would be a function for a jury to be weighing the evidence and understanding the use. So if I may, I know I've got three minutes. Yes, you can save your time for rebuttal. Mr. Hacker. Good morning, Your Honors. May it please the Court, John Hacker for Appellee Chubb. After fire destroyed the Pine Manor facility in 2019, Chubb promptly paid almost $9 million, the value of the dwelling. But the policy, as has been discussed this morning, provided only $25,000 for the contents used as business property. And because the facility and its contents were being used predominantly as a commercial hospitality facility, Chubb agreed to pay that $25,000 business property limit for the lost contents, with some exceptions for property locked away and some valuable articles. That coverage determination did not breach the policy. There was no vexatious or unreasonable claims handling under Illinois Insurance Code, Section 155. And Mr. Gibson has no cognizable claim under the Illinois Consumer Fraud Act, ICFA, independent of his failed once Section 155 claim. With respect, Your Honors, the judgment should be affirmed. As I think we've heard already this morning, the operative question here is really whether Chubb erred in determining that Pine Manor's contents constituted business property within the policy based on the predominant use of the facility as a commercial hospitality venture. And as Judge Bucklow recognized, it's quite a simple point. In this commercial hospitality business, all of the contents were used to conduct that business. Otherwise, in a hospitality space like this, the walls would be incredibly barren and unappealing. It would be terrible to attract and retain guests of the hospitality business. Mr. Hackert, the policy here has exclusions, and it excludes business property. It does not define what that business property is under the exclusions. There's an exception under extra coverages. And if you go to extra coverages, business property is defined there. What is Chubb's position about the meaning of business property under exclusions? Is it the same as under extra coverage, or is it something different? I think it is the same. And with respect, I think the exclusion actually does define business property by cross-reference, I think was the phrase that Judge Sykes used. It's not written there literally like on ink and paper right there, but it says it excludes business property, I think, except as otherwise provided. So that's a direct reference. You look around the policy and see if business property is otherwise provided. Extra expense answers that and defines it. If that's the case, under extra coverage, business property gives specific categories, furniture, supplies, equipment, inventory, books, records, et cetera. Why wouldn't it have been proper to go through the extensive inventory just to make sure that the items fall within there? Because there seem to be some things in the inventory that don't necessarily fall within any of those categories. Right, so a couple of points, or maybe one point, a couple subpoints, which is the way the adjusters conducted the investigation was to determine, first of all, there's a total loss, and then to determine what the facility was doing, what the facility was being used for, which could be different kinds of business. Part of it could be used for business. Those kinds of inquiries might be relevant if, like, one room is being used to make and sell arts or crafts. Here the entire facility is being used to conduct the business, and so that was the threshold determination. And then, and this may be the critical answer to your question, the adjusters gave Mr. Gibson multiple opportunities to explain, show us things within the facility that were not used to conduct that business because, you know, you know the facts. But is that the question, or is the question, show us things that were not furniture, supplies, equipment, inventory, books, records? Used to conduct the business. I think that's the relevant point. Those are all. But it sounds like you're saying anything that was in there that was used to conduct the business should be covered. Wouldn't it only be anything that falls within these categories used to conduct the business? So, in other words, furniture, supplies, equipment. If you have items that fall outside of those categories, even if they're used to conduct the business, why would they be business property if that's how you're defining business property? Right. So here it's two related answers, I think, which is that is the kind of opportunity that we gave Mr. Gibson to provide information. But also in a hospitality business like this, I do think it's the starting. You're not starting off by parsing things that way. I think anything that is available to be used by guests and not locked away, and that's where we ended up. He did establish, ultimately, that certain things were locked away, not available to be used by guests. Those weren't covered precisely because they weren't. But that's not tied to the definition. With respect, I think it is because in this hospitality business, anything that's available to the guests is supplies, equipment, inventory used to conduct the business. There are things that make it attractive and appealing. If he wanted to show that there were certain items that, even though they were available to be used by any guest, somehow weren't used in the business, that opportunity was given to him. Would that fall on him, or would that fall on Chubb, to establish it falls within the exclusion to begin with? I think there's two separate questions. In the adjustment process, everybody's just trying to gather facts. There's no burden shifting. It's not we're talking about. It's just like we've determined that this facility is a commercial hospitality facility. Everything available to the guests appears to us to be used in that, to attract and retain guests. Give us facts that show otherwise. He didn't provide any of those facts. That's a different question then when you come to court. What's the record that's been developed in the claims adjustment process where the facts have been developed, and what Chubb established was that the entire facility was used as a commercial hospitality facility, the contents were used, and he didn't adduce any evidence to show otherwise. There wasn't any basis for that. His argument was a different one. His argument was, as you heard a version of this morning, the whole place was a categorical argument. The whole place was our home. It was used for personal reasons, and for that reason it can't qualify as business property because I purchased it for our family's own enjoyment. Both sides seem to be arguing all or nothing. It does seem, looking at that inventory, that there are items on there, decorative faux flowers, framed personal photos that wouldn't necessarily fall with any of the categories listed in the business property. I know that argument wasn't made. I know that argument wasn't made. But I think the answer would have been, because I do think if it had been made, the answer would have been in a commercial hospitality venue like this, faux flowers, you know, when you go into a Hilton Garden Inn, there's faux flowers sitting there to make the place look attractive. There are photos. From the guest's perspective, the attractive photos make the place appealing. It doesn't matter to the guest that they're personal family photos. They're what, again, makes the surroundings a place the guest wants to pay money to attend. These are the supplies. These are the supplies, the inventory, the equipment. Of this kind of business. It feels odd to call flowers and a picture equipment, but in a hotel that's what the equipment is. That's what you're using to conduct the commercial hospitality business. Let me just mention some of the key facts that haven't gone mentioned this morning. I think Your Honors are aware of them, but the judge relied, and none of this is disputed, to establish the underlying commercial use of the facility throughout the year. We know Gibson Consulting paid $70,000 per month to reserve the compound, including Pine Manor, for training sessions to keep it available for rental, even if it wasn't rented every single day. I mean, no rental facility is always occupied. Very importantly, reported 365 days of business use to the IRS. Had a full-time on-site property manager, 8 to 10 staff. Had a commercial B&B license, a liquor license, had a CGL policy. As we know, dozens of weeks of conferences, trainings, and weddings, and a website that advertised. Mr. Hecker, other than the items that were locked away, what would the $3.5 million in coverage have covered in this property? So, again, two answers. First is, before we knew, sort of in the veil of ignorance, before the fire happens and you try to figure it out, the underwriters wouldn't know what he had locked away. So there could very well be $3.5 million of items locked away, but they don't know that. And then the second point is, as Your Honors pointed out, the underwriters understood by 2017 that there might be a coverage gap, that it might be that he didn't have a substantial contents coverage because this was a commercial facility as to which the contents would be business property, not housing. Said to him, explicitly said to his broker, you should look at another policy, another getting commercial coverage. Commercial property coverage. Commercial property. There's evidence that he had commercial CGL policy? He had gotten, I think, at that point already, a CGL policy. With Chubb? I don't know the answer to that. It doesn't matter. I don't know if it was Chubb, but he did have a CGL policy. And other indicia of running a business that you need to have to run a business, which is what was going on here. He didn't get the commercial property coverage that Chubb recommended. And as Your Honors have already pointed out, that's not Chubb's responsibility to ensure, you know, we're a good business trying to recommend to a client to be sure that his coverage matches his needs. But the law says, this court says in Stone Container and in Plum, and the Illinois Appellate Court said in Nielsen, that an insurer has no duty to, you know, ensure that the client, that the policyholder, has exactly the right coverage. And here again, Chubb actually recommended that he get it. You know, for reasons that were up to him, he chose not to get that additional coverage. Counsel, I want to go back to something that Judge Zaney was asking about. It seems to me if we buy Chubb's definition of business property, and then you have valuable articles that are enumerated, that there's still a sliver of property, personal property, that was not paid out under the policy. I'm thinking about sentimental items, the Ronald Reagan letter, things of that sort. I don't know how much that was valued, but is it your contention that that was on Mr. Gibson to put forth? I mean, I've seen the list of inventory. I mean, it's clear that there's not complete, if you know what I mean. I think I know what I mean. I think my answer is the same as I was giving Judge Zaney, which is, first of all, they weren't arguing. That's not the way they argued this below, that the problem here was a failure to cover the Ronald Reagan letter. I think there's a reference to socks at some point in their brief. The problem that they were alleging was that the entire place was a home that they were using as a home, and it couldn't be. And you heard, again, a version of this argument that they professed confusion about the exclusion not actually applying because business property, maybe the business property definition, didn't apply at all to this. They were making this categorical argument that because of that, the home and all of its contents were personal property, not business property at all. So there wasn't that narrow article by article kind of showing. But second, had there been, again, I think, anything that's available to be enjoyed by to impress clients, patrons of a hospitality facility, or being used in the conduct of the hospitality facility, even if they have sentimental value, I don't doubt that they do, but that's sentimental to the owner. It's the owner's choice to make those, to display those, to attract, retain, and impress paying clients. When they do that, they're using it to conduct their business, again, even though it has separate personal value to them. If there are no further questions, Your Honors, do I ask the Court to affirm? Thank you. Mr. Goodman, rebuttal. We began, we heard the beginning, again, using the phrase predominant use. I mean, again, we're adding language to a policy to narrow the scope of what's covered that isn't found in the policy and that's misleading. There's the issue of what's locked away. You asked questions, Judge St. Eve, and Judge Maldonado, about things that might be window dressing, sentimental things, the Ronald Reagan letter, family photos, and so forth. I mean, by their argument, they're also talking about things that are expressly covered, like the valuable articles, like the paintings, like the valuable posters, the things that are expressly covered that are not defined as business property. So they would, by their argument, bring everything in the house into the business property exclusion without providing any guidance at all in the exclusion itself in terms of how it should be interpreted. In terms of their investigation, they denied the claim in fewer than 30 days. They came out, they said, this house is used for business purposes, we have to pay for the dwelling because there isn't an exclusion, but we're going to exclude the rest, and they conducted no further investigation. Even when we submitted additional information, it was a large loss. It takes a long time to go through a large house with lots of contents. They were aware, for example, the initial adjuster who came out was aware that there were things like antiques because Mr. Gibson asked if he could remove them to try to preserve them. And the adjuster said, sure, go ahead. But they made no attempt to investigate, to evaluate, to understand what, if anything, within the house was used for, how it was used. They just made the determination that the house is a business because it's used, in their view, predominantly for business purposes, even though it's used also for personal purposes, and thus everything within it is inherently transformed. The locked away is something that Judge Bucklow added because apparently she was trying to... I don't really know why she added it, frankly, because the language of the policy is what it is. It should have been drafted in a way that's more careful and more direct, and it would give guidance to the ordinary person about what the scope and limitations of the coverage was, but they didn't. They sold them year after year this policy with $3.5 million of coverage, fully aware that he was using this property, both for a mixed use, for an event where he was doing training. He had these other houses. He had a center within there where he would do the trainings. The property within that building, for example, would clearly be business property. It was used exclusively for business for no other purpose. But how is an ordinary guy, and that's how Illinois law looks at it, how would an ordinary person understand what business property is if he's using the property for mixed use? Thus, for the reasons we've articulated in our briefs, we ask that the court be reversed, that the banner be remanded for further proceedings because, among other things, you have to evaluate what the contents actually are, and are there things that are used narrowly for business purposes? Are there things that are used for personal use? And perhaps what do we do with mixed use? Again, the exclusion itself is silent. Thank you, Mr. Goodman. Thank you, Mr. Hacker. The court will take the case under advisement.